## STOTT et al. v. TIDE WATER ASSOCIATED OIL CO. et al.

### No. 475.

District Court, E. D. Texas, Sherman Division.

Jan. 21, 1946.

Additional Findings Feb. 20, 1946.

Phil L. Kelton, of Dallas, Tex., for plaintiffs.

Dwight Simmons, of Dallas, Tex., for defendants Water Associated Oil Co. and Seaboard Oil Co. of Delaware.

BRYANT, District Judge.

The following are my Findings of Fact and Conclusions of Law:

### Findings of Fact.

The defendants, Tide Water Associated Oil Company and Seaboard Oil Company of Delaware, are referred to herein as Tide Water-Seaboard.

1. From December, 1939 to the date of trial, June 12–13, 1944, the following tracts of land in the John Adams Survey, Anderson County, Texas, were owned as follows:

| | |
|---|---|
| By Elizabeth Jansing, | 25 acres |
| By Mrs. Stott, | 109.35 acres |
| By Mrs. Lubben, | 72.04 acres |

2. From December, 1939 to June 12–13, 1944, each plaintiff owned the royalties payable in accordance with the oil and gas lease covering her tract of land except Mrs. Lubben, who had sold an undivided five royalty acres under her lease prior to 1939.

3. On May 6, 1935, Elizabeth Jansing, a feme sole, as lessor, made an oil and gas lease to Tide Water Oil Company and Texas Seaboard Oil Company (predecessors in title of defendants, Tide Water-Seaboard) covering her 25 acre tract of land. Continuously and including the period from December, 1939 to June 12–13, 1944, Tide Water-Seaboard have owned the Jansing oil and gas lease.

4. On June 5, 1933 Mrs. Lubben, a widow, as lessor, made an oil and gas lease to J. B. Daniel, lessee, covering her 72.04 acre tract of land. On June 17, 1933, the lease was assigned to Tide Water Oil Company and Texas Seaboard Oil Company (predecessors in title of defendants, Tide Water-Seaboard). On February 11, 1939, Tide Water-Seaboard assigned the Lubben lease to Haynes B. Ownby Drilling Company insofar as it covers a tract of 48.49 acres of the original 72.04 acres. Continuously since February 11, 1939, and including the period from December, 1939, to June 12–13, 1944, Tide Water-Seaboard have owned the Lubben lease covering the remaining 23.55 acres of the Lubben tract.

5. On May 6, 1933 Mrs. Stott and husband, as lessors, made an oil and gas lease to J. B. Daniel, lessee, covering Mrs. Stott's 109.35 acre tract of land. On June 17, 1933, the lease was assigned to Tide Water Oil Company and Texas Seaboard Oil Company (predecessors in title of Tide Water-Seaboard). On February 11, 1939, Tide Water-Seaboard assigned the Stott lease to Haynes B. Ownby Drilling Company insofar as it covers a tract of 69.36 acres of the original 109.35 acres. Continuously since February 11, 1939, and including the period from December, 1939 to June 12–13, 1944, Tide Water-Seaboard have owned the Stott lease covering the remaining 39.99 acres of the Stott lease.

6. Gas royalty provisions in the Lubben lease and in the Stott lease are as follows:

"2nd. To pay to lessor, as royalty for gas from each well where gas only is found, while the same is being sold or used off of the premises, one-eighth of the market price at the wells of the amount so sold or used. * * *

"3rd. To pay to lessor as royalty for gas produced from any oil well and used by lessee for the manufacture of gasoline, one-eighth of the market value of such gas. If such gas is sold by lessee, then lessee agrees to pay lessor, as royalty, one-eighth of the net proceeds derived from the sale of said casinghead gas at the wells."

7. Gas royalty provisions in the Jansing lease are as follows:

"2. The lessee shall pay lessor as royalty one-eighth (⅛) of the net proceeds derived from the sale of gas from each well, where gas only is found, while the same is being sold or used off the premises, and in this event settlement shall be made by lessee

on or before the 20th day of each calendar month for gas sold during the preceding month, but nothing in this agreement contained shall require lessee to save or market gas from said lands unless there shall be a surplus above fuel requirements and a market at the well for the same  *  *  *

"3. Lessee shall pay to the lessor for gasoline or other products manufactured and sold by the lessee from the gas produced from any oil well as royalty, one-eighth (⅛) of the net proceeds from the sale thereof, after deducting cost of manufacturing the same. If said gas is sold by the lessee, the lessor shall receive as royalty one-eighth (⅛) of the market value in the field for such gas."

8. In the assignment to Ownby Drilling Company of portions of the Stott and Lubben leases, Tide Water-Seaboard reserved and excepted "as an overriding royalty, free and clear of all development and operating costs, one-sixteenth (⅟₁₆) of all oil, distillate, gas or other petroleum produced or by-products in and under and that may be produced from said land, said royalties to be paid by assignee as follows:

    *    *    *    *    *    *

"(b) On gas produced from said land and sold or used, except for necessary operations under the leases, the market value at the wells of one-sixteenth (⅟₁₆) of all the gas so sold or used, provided that on all gas sold at the wells the royalty shall be one-sixteenth (⅟₁₆) of the amount realized from such sale. Assignee shall not sell or use gas for the manufacture or extraction of gasoline or any other product therefrom without the written consent and approval of assignors."

9. In August, 1943, Ownby Drilling Company entered into a written agreement with Hunt Oil Company to sell gas to Hunt from Ownby's gas-condensate well on the Lubben 48.49 acre tract, to which sale Tide Water-Seaboard consented in writing. Tide Water-Seaboard have not at any time refused or withheld consent for Ownby to sell or use gas from the Stott or Lubben leases which were assigned by Tide Water-Seaboard to Ownby.

10. Tide Water-Seaboard have carried on recycling operations from December,

1939, to date of trial, to wit, June 12–13, 1944. The Trinity Company and the Anco Company each had a recycling plant operating before December, 1939, and the Hunt Company began operating a recycling plant in mid-1940.

11. Except the two tracts assigned by Tide Water-Seaboard to Ownby Drilling Company, a 5-acre Smith Lozica tract, and a C. L. Smith tract lying to the North of the Lubben-Tide Water-Ownby tract, at all times in question Tide Water-Seaboard owned and operated all the leases surrounding plaintiffs' lands on the North, East and South.

12. Before Tide Water-Seaboard began their recycling operations, Tide Water-Seaboard and the plaintiffs had been unable to reach an agreement upon the unitization of plaintiffs' lands for the production of wet gas and recycling operations. They never were able to reach an agreement at any time under consideration in this suit, although plaintiffs and defendants carried on their negotiations in good faith.

13. At all times involved in this suit Tide Water-Seaboard were ready and willing and undertook to unitize the Jansing, Stott and Lubben tracts and to have them participate in recycling operations carried on by Tide Water-Seaboard in the field in the same manner and on the same basis as other land owners and royalty owners in the field. Jansing, Stott and Lubben declined to unitize and participate in these operations.

14. It was not feasible or practical or in accord with prudent operations for Tide Water-Seaboard to conduct separate recycling operations on the Jansing tract or on the Lubben tract or on the Stott tract.

15. Tide Water-Seaboard have produced from plaintiffs' lands all the oil and all of the gas, including oil and distillate separated therefrom, for which there was a market. This gas, oil and distillate has been sold and the royalties due thereon have been paid to the plaintiffs.

16. Tide Water-Seaboard began their recycling operations on December 13, 1939, i. e., they began withdrawing wet gas from the Shaw and Cern wells 10, 11, 12 and 14, and the S & I Murray B-1, and began in-

jecting dry gas in the Shaw and Cern #13 and the S & I Murray A-1.

17. Tide Water-Seaboard have operated continuously from December 13, 1939 to time of trial. They have from time to time added other withdrawal and injection wells to their operations, i. e., withdrawal wells: Zelf Williams No. 2; Edna Tucker No. 1; W. V. Keeling No. 1; Dave Reagan No. 1; A. Martin No. 1; and Shaw & Cern Nos. 15, 16 and 17; and have added the C. L. Smith No. 1 as an injection well.

18. The portions of the plaintiffs' lands which have had the wet gas replaced by dry gas (as shown by the map marked Plaintiffs' Exhibit 8) are set out in acreage below:

Tide Water-Seaboard:

| | |
|---|---|
| Jansing | 3.0 acres |
| Lubben (net) | 21.09 " |
| Stott | 9.0 " |

Ownby tracts, assigned by Tide Water-Seaboard to Ownby:

| | East | West |
|---|---|---|
| Lubben (net) | 6.53 acres | 18.12 acres |
| Stott | 17.36 " | 24.0 " |

19. The following are elements essential to the calculation of the area containing dry gas and the amount of wet gas that the dry gas has replaced:

(a) Bottom hole temperature 170 deg. F.

(b) Gas pressure 2,255 lbs. absolute.

(c) Sand porosity 22%.

(d) Compressibility factor 0.85.

(e) As of January 1, 1940, 1 acre foot contains 1077 M. c. f. of gas measured at 60 deg. F. and under 14.65 pressure absolute (1436 M. c. f. less 25% volume for connate water).

(f) 30% of the liquids in the wet gas cannot be recovered.

(g) 1% of volume is deductible because of vapor water corresponding to the water produced with the liquid.

(h) Wet gas yields .6 gal. liquid per M. c. f.

(i) Connate water in sand spaces 25%.

(j) Depth of sand and gas holding formations: 70 feet on Jansing and the east portion of Lubben land; 60 feet on east portion of Stott land; 40 feet on west portion of Lubben and Stott lands.

20. These items enter into the calculation of the amount of damages:

(a) Price of condensate, $1.20 per barrel. (Production tax has been deducted; the above price being the net paid by defendants to the plaintiffs).

(b) Value of liquid obtainable per M. c. f., $0.0171.

(c) Total value of liquid obtainable from one acre-foot:
$0.0171 × 743.13 = $12.707523

(d) Royalty — value per acre-foot — $1.58844.

(e) Table showing damages resulting:

Damages Resulting from Withdrawal of Wet Gas and Replacing it with Dry Gas, Less Amounts Received for Condensate (the latter according to Defendants' Records) and Allowing 25% of Sand Volume for Connate Water:

| Tract and Item | Dry Area Acre-Feet | At $1.58844 |
|---|---|---|
| Tide Water-Seaboard Jansing—Total | 210 | 333.57 |
| Less part of $571.90 received for Lone Star Condensate | (3/25) | 68.60 |
| Net amount due Miss Jansing | | $264.97 |
| Tide Water-Seaboard Lubben—Total | 1,533 | 2435.10 |
| Less Amounts received for Lone Star Condensate | | 64.62 |
| Net amount due Mrs. Lubben on Lubben tract | | 2370.48 |
| Tide Water-Seaboard-Ownby Lubben—Total | 1,181.9 | 1877.38 |
| Less part of $1,337.70 offered by Hunt for Recycled Gas (26.5/49.5) | | 714.12 |
| Net amount due Mrs. Lubben | | 1163.26 |
| Total amount due Mrs. Lubben | | $3533.74 |
| Tide Water-Seaboard Stott—Total | 540. | 857.76 |
| Less part of $164.10 received for Lone Star Condensate (9/40) | | 36.95 |
| Net amount due Mrs. Stott on Stott tract | | 820.81 |
| Tide Water-Seaboard-Ownby Stott—Total | 2,001.6 | |
| Net amount due Mrs. Stott | | 3179.42 |
| Total amount due Mrs. Stott | | $4000.23 |

Credit has been given Tide Water-Seaboard for payments made or tendered to the various plaintiffs in the ratio that the total acreage bears to the dry acreage. With refer-

ence to the Tide-Water-Seaboard-Ownby-Lubben tract, the defendants have been credited with the proportionate part of the payments *offered* by the Hunt Company for condensate taken from this tract by the Hunt Company.

## Conclusions of Law

The following are my Conclusions of Law:

■ 1. The defendants are liable because of the breach of their implied covenants not to injure the leases of the plaintiffs. They have done this by replacing the wet gas under a part of the plaintiffs' lands with dry or residue gas which had been processed in defendants' recycling plant. The processed gas had been reinjected into the gas holding formations through the reinjection wells in such a way as to move toward the plaintiffs' wells.

■ 2. The defendants are liable as to the leases assigned by them to Ownby, by reason of the overriding royalty retained under the assignments, and by reason of the express provisions in the assignments giving them control over the disposition of the gas or condensate produced from the assigned acreage.

3. The plaintiffs should recover damages from the defendants resulting from the recycling operations of the defendants, as shown in the schedule set out in the Findings of Fact.

4. Unitization of plaintiffs' oil and gas leases is not authorized by the leases.

## Additional Findings of Fact

On this 11th day of February, A.D.1946, came on for consideration defendants' request for additional findings of fact, and the court, having heard and considered the same, makes additional findings of fact as follows:

21. The prevailing royalty paid to royalty owners for wet gas in the Long Lake Field during the time involved in this lawsuit was one-half of one-eighth of the amount (less taxes) received by the recycling plant for the condensate recovered in the plant from the wet gas.

22. The production of wet gas from the reservoir and the reinjection of residue dry gas into the reservoir have resulted in the replacement of wet gas by dry gas under portions of plaintiffs' lands.

All other requested additional findings are disallowed, to which defendants duly excepted.